UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS, INC. and UNITED STATES AIRCRAFT INSURANCE GROUP,<br><br>        Plaintiffs,<br><br>v.<br><br>WESAIR, LLC and JAMES TYGRETT,<br><br>        Defendants. | 2:08-CV-00891-PMP-LRL<br><br><u>ORDER</u> |

Presently before the Court is Plaintiffs' Motion for Summary Judgment (Doc. #47) with supporting affidavit (Doc. #48), filed on January 12, 2010. Defendant James Tygrett filed a Limited Joinder to Plaintiffs' Motion for Summary Judgment (Doc. #52) on January 22, 2010. Defendant WesAir, LLC filed an Opposition (Doc. #54) on January 26, 2010. Defendant Wesair, LLC also filed a supplement (Doc. #56) on January 29, 2010. Plaintiffs filed a Reply (Doc. #57) and objections to evidence (Doc. #58) on February 2, 2010.

**I. BACKGROUND**

Plaintiffs United States Aircraft Insurance Group ("USAIG") and United States Aviation Underwriters, Inc. ("USAU") brought this declaratory judgment action to determine their legal obligation to defend and indemnify Defendant WesAir, LLC ("WesAir") for an accident involving WesAir's former employee, Defendant James Tygrett ("Tygrett"). On March 30, 2005, WesAir hired Tygrett as a Flight Manager for assets managed by WesAir. (Pls.' Mot. for Summ. J. (Doc. #47) ["MSJ"], Ex. 7, Attach. 2.)

1  Tygrett's job duties included scheduling aircraft use, compiling flight and maintenance logs,
2  coordinating flight crews and meals, maintaining a hangar lease, and other office tasks.
3  (Id.)  Tygrett reported directly to Wesley Adams ("Adams"), the Manager of Western States
4  Management Services, which operated WesAir.  (MSJ, Ex. 7 at 11-12, 17, 24.)  Tygrett had
5  no other direct supervisor.  (Id.)
6         According to Tygrett, Adams stressed that part of Tygrett's job duties was to
7  ensure the airplanes "stay up and running and flying and available . . . at all times."  (MSJ,
8  Ex. 9 at 19.)  Adams confirmed that one of Tygrett's job responsibilities was to ensure there
9  was a plane ready when a flight was needed.  (MSJ, Ex. 7 at 41.)  Adams testified that he
10 did not recall ever telling Tygrett not to do something or telling Tygrett that he was not
11 supposed to be doing a particular task.  (Id. at 34.)  Tygrett testified that throughout his
12 employment, no one ever told him he specifically was prohibited from performing any
13 particular activities.  (Id. at 19-20.)  Specifically, Tygrett stated that Sean Hayden
14 ("Hayden"), a WesAir director of maintenance, never told Tygrett he was not to engage in
15 any sort of maintenance activities.  (MSJ, Ex. 9 at 57.)  Tygrett had performed some
16 maintenance activities, such as changing oil on airplanes and helping to jack up an airplane.
17 (MSJ, Ex. 8 at 33, Ex. 9 at 51-53.)
18        Hayden averred that Tygrett had "attempted to involve himself with
19 Maintenance Operations," and that Hayden informed Tygrett maintenance activities were
20 "outside his area of responsibility and informed him not to engage in any activities relating
21 to Maintenance Operations."  (Def. WesAir's Resp. to Pls.' Mot. for Summ. J. (Doc. #54)
22 ["WesAir Opp'n"], Ex. F ¶¶ 6-7.)  At his deposition, Hayden testified that he previously had
23 observed Tygrett check oil on airplanes.  (MSJ, Ex. 8 at 33.)  Hayden testified that he told
24 Tygrett that Tygrett was acting in Hayden's area of authority and that Tygrett should "leave
25 it alone" and not "mess" with Hayden's department.  (Id. at 33, 41.)  According to Hayden,
26 prior to the incident in question, Tygrett never had wheeled out a nitrogen canister used to

1  inflate tires, and Hayden had not advised Tygrett not to do so because the issue never arose.
2  (Id. at 36.)
3       A week prior to the accident, a pilot performing a pre-flight check noticed that
4  the plane's static wicks, which discharge static an airplane builds up during flight, were
5  cracked.  (MSJ, Ex. 8 at 44, Ex. 9 at 35-36.)  The pilot indicated that he could not fly the
6  plane with the damaged wicks.  (MSJ, Ex. 9 at 38.)  Tygrett contacted Hayden regarding the
7  problem.  (Id. at 38-39.)  Hayden was playing golf at the time, and expressed that he would
8  be unhappy if he had to come in and change the wicks.  (Id. at 39.)  According to Tygrett,
9  Hayden suggested Tygrett change the wicks.  (Id. at 39-40.)  Tygrett and the pilot thereafter
10 changed the wicks.  (Id. at 40-41.)  Tygrett was not reprimanded or criticized for his
11 participation in changing the static wicks, and Tygrett contends he was thanked for helping
12 to get the airplane flight-ready.  (Id. at 43.)  According to Hayden, he assumed the pilot, not
13 Tygrett, would replace the static wicks, and Hayden avers he did not thank Tygrett for
14 replacing the wicks.  (WesAir Opp'n, Ex. F at ¶¶ 8-9.)
15      About a week later, on September 8, 2005, Tygrett was notified that a plane
16 needed to be ready for a 7:30 a.m. departure the next morning, and the plane must be on
17 schedule because a passenger had an appointment.  (MSJ, Ex. 9 at 22.)  The next morning,
18 Tygrett observed that the airplane's left tire on the landing gear was flat.  (Id. at 29.)  When
19 the pilot arrived, Tygrett informed him the tire was flat.  (Id. at 30.)  Tygrett also indicated
20 that he did not know whether Hayden was coming in to work to inflate the tire.  (Id.)
21 Tygrett and the pilot attempted to reach Hayden, but did not reach him directly.  (Id. at 31.)
22 The pilot and Tygrett each left Hayden voice mail messages indicating that Hayden was
23 needed right away and that the passenger was on his way to the airport.  (Id. at 31, 33.)
24 ///
25 ///
26 ///

1  Tygrett decided to inflate the tire himself.[1]  (MSJ, Ex. 9 at 44.)  While Tygrett
2  was inflating the tire, the wheel and tire exploded, traumatically amputating Tygrett's right
3  arm above the elbow.  (Joinder to Resp. to Mot. for Summ. J. (Doc. #24) ["Joinder"], Ex. 1
4  ¶ 3.)

5  Because WesAir did not have worker's compensation coverage, Tygrett filed a
6  worker's compensation claim with the Nevada Division of Industrial Relation's ("DIR")
7  uninsured employers' claim account.  (Joinder, Ex. 2.)  In a February 1, 2006 letter, DIR
8  notified WesAir's attorney that DIR made payments to Tygrett, DIR has a cause of action
9  against WesAir for expenditures on Tygrett's claim, and Tygrett may file an action against
10 WesAir.  (Id.)

11 On June 4, 2007, Tygrett filed a Nevada state court action, alleging negligence on
12 the part of WesAir and the aircraft's owner.  (MSJ, Ex. 2.)  WesAir moved to dismiss,
13 arguing that the Nevada Revised Statutes allow an injured employee of an employer without
14 worker's compensation insurance to seek relief from only DIR or the courts, but not both.
15 (MSJ, Ex. 10.)  In its motion, WesAir noted that Tygrett alleged his injuries occurred during
16 the course and scope of his employment.  (Id.)  WesAir also stated that in response to
17 Tygrett's worker's compensation claim, it had accepted the terms and conditions of the
18 Nevada Industrial Insurance Act ("NIIA"), and was paying worker's compensation benefits
19 to Tygrett.  (Id.)  WesAir thus argued that Tygrett had elected to pursue his rights under
20 Nevada's worker's compensation scheme and thus could not also bring a civil action
21 against WesAir.  (Id.)

22 WesAir included in support an affidavit from Michael Van, WesAir's corporate
23 counsel.  (MSJ, Ex. 12.)  Van averred that he "confirmed with the Division of Industrial

---

[1] Tygrett previously had inflated tires on airplanes approximately thirty or forty times, although the record is unclear as to whether he ever inflated tires for his employer prior to September 9, 2005.  (MSJ, Ex. 9 at 44.)

4

Relations that Wesair, LLC would accept the terms, provisions and conditions of the NIIA and remit payment to the Division of Industrial Relations for all worker's compensation benefits paid to [Tygrett]." (Id.) WesAir has been paying Tygrett's worker's compensation benefits since March 2006. (Id.)

On October 30, 2007, the state trial court denied the motion to dismiss, holding that where an employer has failed to provide worker's compensation insurance, an employee may pursue his rights under the worker's compensation scheme and sue his employer. (Joinder, Ex. 6.) However, the court granted WesAir's request for certification to the Nevada Supreme Court on the issue of whether the Nevada statutes allow an injured employee to file a claim with both DIR and the courts. (Id.) The Nevada Supreme Court denied WesAir's subsequent petition for writ of mandamus or prohibition, indicating that under the NIIA, an employee was not limited to the remedies in the worker's compensation scheme when his employer had not purchased worker's compensation insurance.[2]

At the time of the accident, WesAir was insured under a "USAIG All-Clear Aircraft Policy" (the "Policy") issued by and through USAIG and USAU. (MSJ, Ex. 1, Cover, Endorsements 18, 29.) The Policy contains a duty to defend, stating Plaintiffs "will defend any liability suit brought against [WesAir] for bodily injury, mental anguish, personal injury or damage to property to which this insurance applies, even if the suit is groundless." (MSJ, Ex. 1 at 3.) The Policy also provides liability coverage for those sums WesAir becomes "legally obligated to pay as damages for bodily injury, mental anguish, personal injury and damage to someone else's property resulting from the ownership, maintenance or use of the aircraft." (Id. at 2.) However, the Policy specifies that certain claims are not covered, including those covered by worker's compensation laws (the

---

[2] The parties have presented no evidence on what occurred in the state court action following the state trial court's decision. However, this Court may take judicial notice of what occurred before the Nevada Supreme Court. See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

5

1  "Worker's Compensation Exclusion"). (Id. at 4.) Specifically, the Policy excluded
2  coverage for "any claim that's covered under a worker's compensation . . . law," as well as
3  any "claims for injury to your or any other person's or organization's employees while
4  they're actually doing work for you or them." (Id.)
5         After Tygrett filed the underlying action in Nevada state court, Plaintiffs
6  informed WesAir that the Policy does not cover Tygrett's claim because Tygrett's injury
7  was sustained while acting in the scope of his employment. (MSJ, Ex. 3 at 1.)
8  Nevertheless, in a July 27, 2007 letter, USAU stated it would defend WesAir, subject to a
9  reservation of rights. (Id.) Thereafter, on July 9, 2008, Plaintiffs filed suit in this Court
10 against WesAir and Tygrett. (Compl. (Doc. #1).) Plaintiffs request declaratory relief,
11 arguing that, under the USAIG Policy, Plaintiffs do not have a duty to defend or indemnify
12 WesAir in the underlying action. (Id. at 4-6.)
13        Plaintiffs previously moved for summary judgment, arguing Tygrett's claim is
14 not covered due to the Worker's Compensation Exclusion. (Mot. Summ. J. (Doc. #21).)
15 WesAir opposed the motion, arguing as a legal matter that the Policy contained an
16 endorsement which broadened coverage to include Tygrett's claim. (Opp'n to Mot. Summ.
17 J. (Doc. #23).) WesAir also argued as a factual matter Tygrett's injuries did not arise out of
18 his employment with WesAir. (Id.) Tygrett filed a limited joinder in WesAir's opposition
19 in which he joined WesAir's legal argument regarding the Policy's application. (Joinder.)
20 However, Tygrett contended that his injuries arose out of his employment. (Id.)
21        This Court granted in part and denied in part Plaintiffs' motion for summary
22 judgment. (Order (Doc. #32).) The Court agreed with Plaintiffs' interpretation of the
23 Policy that the Worker's Compensation Exclusion applied to exclude coverage for any
24 claim covered by worker's compensation, or for any injury to a WesAir employee while the
25 employee was "actually doing work" for WesAir. (Id. at 7-11.) However, the Court noted
26 that although the accident occurred on work premises during work hours, Hayden had

6

averred by affidavit that he had told Tygrett to avoid performing maintenance activities. (Id.)  The Court therefore concluded that genuine issues of material fact remained regarding whether Tygrett's conduct arose out of and was in the course of his employment, and whether he was actually doing work for WesAir by inflating the tire.  (Id.)

In discovery propounded after the Court's prior Order, Tygrett agreed that his injuries arose out of and were suffered in the course of his employment.  (MSJ, Ex. 5.) Tygrett also agreed that he was injured while doing work for WesAir.  (Id.)  WesAir, however, denied Tygrett's injuries arose out of and in the course of his employment because Tygrett was not responsible for aircraft maintenance or repair, was not qualified to perform such work, and was not authorized by his employer to do such work.  (MSJ, Ex. 6.)  WesAir also contended that Hayden previously had told Tygrett that aircraft maintenance activities were outside Tygrett's area of responsibility and Tygrett was not to engage in any such activities.  (Id.)

Plaintiffs now move for summary judgment, again arguing no genuine issue of material fact remains that Tygrett's claim is covered by one or both provisions in the Worker's Compensation Exclusion.  Plaintiffs also argue WesAir should be estopped from arguing Tygrett's injuries do not arise from the scope of his employment because WesAir agreed to accept responsibility for paying Tygrett's worker's compensation claim and argued in the state court that Tygrett therefore could not pursue a civil lawsuit outside the parameters of the worker's compensation statutory scheme.  Tygrett filed a limited joinder in Plaintiffs' motion, agreeing that his injuries arose out of his employment.[3]

WesAir opposes the motion, arguing genuine issues of material fact remain because Tygrett was not authorized to perform preventative maintenance on airplanes, and Hayden's testimony that he told Tygrett not to do so raises an issue of fact under Nevada

---

[3] Tygrett continues to assert the Policy covers his claim under a separate endorsement.

7

law as to whether Tygrett was acting in the course and scope of his employment. As to estoppel, WesAir argues that it did not concede in the state court proceedings that Tygrett's injuries arose in the course and scope of his employment. Rather, on a motion to dismiss standard, WesAir assumed those facts to be true in an effort to resolve one of WesAir's defenses. WesAir also argues it raised an affirmative defense in the civil action that Tygrett's injuries did not arise in the course and scope of his employment.

## II. DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

Judicial estoppel is an equitable doctrine that "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."[4] Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008) (quotation omitted). Although judicial estoppel is not reducible to an exhaustive formula, the Court generally considers three factors: "1) the party's current position is 'clearly

---

[4] "[F]ederal law governs the application of judicial estoppel in federal court." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 603 (9th Cir. 1996).

inconsistent' with its earlier position, 2) the party was successful in persuading a court to accept its earlier position, and 3) the party would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Williams v. Boeing Co., 517 F.3d 1120, 1134 (9th Cir. 2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). These factors are not exhaustive and other considerations may affect the Court's decision whether to apply judicial estoppel, such as whether a party's inconsistent positions create a risk of inconsistent judicial determinations. New Hampshire, 532 U.S. at 751; Williams, 517 F.3d at 1135. The inquiry thus is "driven by the specific facts of a case." Johnson v. State, Or. Dep't of Human Resources, Rehabilitation Div., 141 F.3d 1361, 1368 (9th Cir. 1998). Whether to invoke judicial estoppel lies within the Court's discretion. Id.

To be entitled to worker's compensation benefits in Nevada, an employee must establish, by a preponderance of the evidence, that his injuries arose out of and in the course of his employment. Nev. Rev. Stat. § 616C.150(1); Law Offices of Barry Levinson, P.C. v. Milko, 184 P.3d 378, 385-86 (Nev. 2008). Where the employee's employer has failed to provide the required coverage for worker's compensation, the employee may file a claim for benefits under the uninsured employers' claim account. Nev. Rev. Stat. § 616C.220(2). To obtain benefits under the uninsured employers' claim account, the employee must show, among other things, that he suffered an injury which arose out of and in the course of his employment. Id. § 616C.220(2)(b). The employee also must irrevocably assign to DIR a right of subrogation. Id. § 616C.220(2)(d).

An employer who has failed to provide the required coverage is liable for all payments DIR makes on the employer's behalf, "including any benefits, administrative costs or attorney's fees paid from the uninsured employers' claim account or incurred by the Division," plus interest. Id. § 616C.220(5), (12), (13). DIR may bring a civil action against the employer to recover payments owed plus interest. Id. § 616C.220(6). Additionally, DIR may impose an administrative fine on an employer for failing to provide the mandatory

coverage. Id. § 616C.220(14). However, the employer may administratively appeal DIR's decision to accept the employee's claim for benefits. Id. § 616C.220(10).

The Court, in its discretion, will judicially estop WesAir from denying Tygrett's injury arose out of and in the course of his employment. When contacted by DIR, WesAir accepted the terms of Nevada's worker's compensation scheme. It thereby necessarily accepted Tygrett established that his injury arose out of and in the course of his employment. WesAir could have challenged the applicability of the worker's compensation scheme to Tygrett's injury, but chose not to do so.[5] WesAir received benefits from its prior position. By agreeing with DIR that it would pay Tygrett's claim, WesAir avoided litigation with DIR over whether Tygrett was entitled to benefits, which could have resulted in attorney's fees, increased administrative costs, and interest on all payments if WesAir lost the appeal. WesAir now takes the contrary position that Tygrett's injuries did not arise out of and in the course of his employment. WesAir does so in an effort to gain a second benefit, coverage under an insurance policy that excludes worker's compensation claims. Allowing WesAir to do so would allow it to derive an unfair advantage of avoiding litigation with DIR and the attendant risks and costs, while simultaneously evading an exclusion for worker's compensation claims in an insurance policy.

Additionally, judicial estoppel is appropriate in this case to prevent inconsistent results. The result of the Nevada administrative scheme was that Tygrett's injuries arose out of and in the course of his employment. To find otherwise in this related insurance action would be incongruous with that result. The Court therefore judicially estops WesAir from denying Tygrett's injuries arose out of and in the course of his employment.

///

---

[5] Although termed "judicial" estoppel, the doctrine may apply to prevent a party from taking an inconsistent position in a prior administrative proceeding, such as a worker's compensation proceeding. Rissetto, 94 F.3d at 604.

Because the Court will preclude WesAir from denying Tygrett's injuries arose out of and in the course of his employment, the Policy's Worker's Compensation Exclusion applies. The Court therefore will grant Plaintiffs' motion for summary judgment.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. #47) is hereby GRANTED.

DATED: April 28, 2010

_____
PHILIP M. PRO
United States District Judge